# KANSAS CITY GUNNING ADVERTISING COM-PANY, Appellant, v. KANSAS CITY et al.

### In Banc, March 1, 1912.

1. **CITIES: Police Power: Constitutional Question: Bill Boards: Near Park or Boulevard.** A section of an ordinance of Kansas City regulating advertising bill boards, which prohibits the maintenance of such boards within one hundred feet of the line of any public park or boulevard, is void, and the plaintiff may by injunction prevent its enforcement.

2. **CONSTITUTIONAL LAW: Void Parts Separable.** The elision from a city ordinance of a void section upon which no other section or provision is dependent, does not affect the remainder of the ordinance if it is otherwise constitutional and valid.

3. **CITIES: Police Power: General Welfare Clause: Regulating Bill Boards.** By the charter of Kansas City the mayor and common council are granted power to pass all such ordinances not inconsistent with the charter and the State laws "as may be expedient in maintaining the peace, order, good government, health and welfare of the city; and to license, tax and regulate all occupations, professions and trades not heretofore enumerated." The enactment of an ordinance regulating the erection and maintenance of advertising bill boards is an exercise of that police power.

4. ——: ——: **Act Justified by Conditions: Question for Judiciary.** The Supreme Court will pass upon the question whether a city's exercise of its police power involved in the case at bar was justified by existing conditions.

5. ——: ——: ——: **Regulating Bill Boards: Conditions Giving Rise to Ordinance: Evidence.** The evidence as to the general condition of bill boards in Kansas City when that city passed the ordinance under review, was, that they sheltered criminals, that filth collected behind them, that they interfered with the fire department and that they were dangerous to life and limb. The plaintiff's bill boards were not, perhaps, so dangerous as some others, yet they hindered the fire department and were of the same kind as others that had fallen and done injury. The ordinance in question declares that no bill board shall be nearer the street than 12 feet, nor more than 10 feet high; that there must be a clear space of 18 inches under each board; that all boards must be erected on straight lines and come no nearer than three feet to any obstruction; that they must bear no immoral picture;

that all such boards must be licensed; and that all boards not then conforming to the ordinance shall be torn down and removed unless altered. *Held*, that the passage of the ordinance was necessary to the public welfare and it is therefore a valid exercise of the city's police power.

6. ———: ———: ———: Walls and Fences. An ordinance purporting to regulate the erection and maintenance of signs and bill boards on city streets cannot be so construed as to prohibit the placing of proper signs on the walls of buildings and on fences, even though these walls and fences by no means conform to the provisions of the ordinance as to location, height, etc.

7. EQUITY: Injunction: Enforcing Criminal Law. The jurisdiction of equity to prevent irreparable injury to property is not divested by the fact that the act to be enjoined may also be a violation of the criminal law; neither does a court of equity lack power to enjoin a public nuisance. But a court of equity is not a medium for the enforcement of the criminal law, and hence it scans closely transactions having that aspect before entertaining jurisdiction.

8. ———: ———: Refusal to Enforce Quasi-Criminal Ordinance: Bill Boards. A city cannot have a mandatory injunction to enforce its ordinance regulating the erection and maintenance of bill boards when that ordinance is *quasi*-criminal in its nature, is sanctioned by fine, and contains within itself efficient means of enforcement.

9. ———: ———: Constitutional Question: Retrospective Laws. An ordinance regulating the erection and maintenance of bill boards, which became operative only after its passage, is neither retrospective nor destructive of vested rights, although it operated upon pre-existing structures.

10. INJUNCTON: Costs. Where the plaintiff maintains its injunction suit as to one section in the city ordinance struck at, but fails as to the remainder, and the defendant city fails to secure, by cross-bill, a mandatory injunction enforcing the ordinance in whole or in part, the costs of trial and appellate courts are divided equally between the plaintiff and the defendant city.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

REVERSED AND REMANDED (*with directions*).

*Reed, Atwood, Yates, Mastin & Harvey* and *McCune, Harding, Brown & Murphy* for appellant.

(1) The charter of Kansas City gives no express authority to pass the ordinance in question. There being no express authority, there is no presumption in favor of the validity of the ordinance. There is no express authority given to declare that a nuisance which in fact is not so. St. Louis v. Packing Co., 141 Mo. 383; St. Louis v. Butler, 178 Mo. 311; Village of St. John v. McFarlan, 33 Mich. 72; Dillon on Municipal Corporations (4 Ed.), p. 155; Schott v. People, 89 Ill. 197; Brown v. Carrollton, 122 Mo. App. 276; Yates v. Milwaukee, 10 Wall. 497. There being no express authority, the city can only derive authority from its general implied police powers, and there can be no implied police power except it grows out of necessity. It therefore devolves upon the defendant in this case to show that said ordinance is not merely expedient and desirable, but that it is indispensably necessary. Wilson v. Commonwealth, 90 Pa. St. 498; Railroad v. Jacksonville, 67 Ill. 40; Stockton Laundry Case, 26 Fed. 611. (2) The ordinance is in violation of section 21, article 2, Constitution of Missouri, which forbids the taking or damaging of private property without just compensation, and of section 30, article 2, which provides that no person shall be deprived of life, liberty or property without due process of law, and is unreasonable, oppressive, discriminatory and void. Chicago v. Gunning System, 214 Ill. 268; Com. v. Adv. Co., 188 Mass. 348; People v. Green, 83 N. Y. Supp. 460; Bosback v. Sands, 95 Md. 400; Bill Posting Co. v. Atlantic City, 58 Atl. 342; Crawford v. Topeka, 51 Kan. 756; Passaic v. Patterson, 62 Atl. 267; People ex rel. v. Murphy, 195 N. Y. 126, 21 L. R. A. (N. S.) 735; Varney v. Williams, 21 L. R. A. (N. S.), 741; State v. Whitlock, 149 N. C. 542. (3) The bulletin boards mentioned in the petition were constructed under the existing law of the city. The city having authorized their construction, their manner of construction, their location, cannot now change its mind and

declare them to be nuisances. Allison v. Richmond, 51 Mo. App. 136; Wadleigh v. Gilman, 12 Me. 406; Jackson v. Miller, 60 Atl. 1021; Buffalo v. Chadeayne, 134 N. Y. 165; St. Louis v. Theater Company, 202 Mo. 701; Freund, Police Power, par. 538, 539 and 540. (4) The bulletin boards having been built under legal authority of the city, that same legal authority cannot declare them a nuisance unless they are so in fact, which is a question to be determined in each case. Transportation Co. v. Chicago, 99 U. S. 635; State ex rel. v. St. Louis, 207 Mo. 365; Payne v. Company, 112 Mo. 17; Casey v. Company, 114 Mo. App. 61. (5) The city has no power by ordinance to declare that to be a nuisance which is not so in fact, or to suppress in part or *in toto* any business within its limits which is not a nuisance *per se*. St. Louis v. Heitzberger, 141 Mo. 375; Yates v. Milwaukee, 10 Wall. 497; Crawford v. Topeka, 51 Kan. 762; Bryan v. Chester, 212 Pa. St. 259; Salem v. Company, 89 Mass. 431; Chicago v. Laflin, 49 Ill. 172; Babcock v. Buffalo, 59 N. Y. 268; Cole v. Kegler, 64 Iowa 591; 1 Am. & Eng. Ency. Law (2 Ed.), 90 (note). (6) The ordinance might be valid and reasonable as to all future constructions, yet invalid and unreasonable when applied retroactively. Whitmeir v. Buffalo, 118 Fed. 773. (7) This ordinance is invalid even as to future constructions. It is discriminatory. It is leveled against the business and not the boards. It deprives the lot owner of the use of a portion of his lot. It violates both the State and Federal Constitutions. Bill Posting Co. v. Denver, 107 Pac. 261; People v. Murphy, 195 N. Y. 126; Bryan v. Chester, 212 Pa. St. 256; Varney v. Williams, 100 Pac. 867; Passaic v. Patterson, 62 Atl. 267; State v. Whitlock, 149 N. C. 542; Crawford v. Topeka, 51 Kan. 756; Bill Posting Co. v. Atlantic City, 62 Atl. 267; People v. Green, 83 N. Y. Supp. 460; Commonwealth v. Boston, 188 Mass. 348; Chicago v. Gunning, 214 Ill. 628; St. Louis v. Hill, 116 Mo. 527; Western v.

Knickerbocker, 103 Col. 11; Bostock v. Sands, 95 Md.
400; Wright v. Hart, 182 N. Y. 330; Austin v. Murray, 16 Pick. 126; Gaines v. Buford, 1 Dana (Ky.) 481;
Mugler v. Kansas, 123 U. S. 661. (8) The enforcement
of an ordinance is a quasi-criminal action, and not on
a plane with a purely civil one. If the ordinance is
held to be valid, the city must look to the method prescribed in the ordinance for its enforcement. Stock
Exchange v. McClaughry, 148 Ill. 381; Village of St.
John v. McFarlan, 33 Mich. 72; Village of Wampum v.
Moore, 34 Wis. 450; Dillon, Mun. Corp. (5 Ed.), sec.
727, 1107, note; 1 High on Injunctions, sec. 700; 2
Story, Eq. Jur., sec. 857; Chicago v. Collins, 49 L. R.
A. 410; Poyer v. DesPlaines, 123 Ill. 111; Railroad v.
Ottawa, 148 Ill. 397; Yates v. Batavia, 79 Ill. 500.

*Francis M. Hayward* and *E. C. Meservey* for respondent.

(1) The ordinance in question, except section 4,
was a valid exercise of the powers conferred by the
Charter of 1889. Art. 1, sec. 1, par. 10, par. 31; Gunning Co. v. St. Louis, 235 Mo. 99. (2) Such ordinance, omitting section 4 thereof, is a reasonable exercise of the police power as to all billboards to be
constructed or reconstructed and is not a taking of
property without just compensation or without due
process of law. Gunning Co. v. St. Louis, 235 Mo. 99;
In re Wilshire, 103 Fed. 620; Whitmer v. Buffalo, 118
Fed. 773; Rochester v. West, 164 N. Y. 510; Gunning
System v. Buffalo, 75 App. Div. (N. Y.) 31; Rideout
v. Knox, 148 Mass. 368; Dillon, Mun. Corp. (4 Ed.), p.
211; Mugler v. Kansas, 123 U. S. 623; St. Louis v.
Theatre Co., 202 Mo. 690; Campbell v. Kansas City,
102 Mo. 326; Welch v. Swasey, 193 Mass. 364. (3)
It is also a valid exercise of the police power to require all existing billboards to conform to the requirements of the ordinance within six months after its

passage. St. Louis v. Theatre Co., 202 Mo. 690; Gunning Co. v. St. Louis, 235 Mo. 99; In re Wilshire, 103 Fed. 620; Baumgartner v. Hasty, 100 Ind. 575; North Chicago v. Lake View, 105 Ill. 207; Harvey v. DeWoody, 18 Ark. 252; St. Louis v. Kaime, 180 Mo. 309; Mugler v. Kansas, 123 U. S. 623; Kidd v. Pearson, 128 U. S. 1; Rideout v. Knox, 148 Mass. 368; Campbell v. Kansas City, 102 Mo. 326; Arms v. Ayer, 192 Ill. 601; Pauley v. Steam G. & L. Co., 131 N. Y. 90; Sewell v. Moore, 166 Pa. 570; St. Louis v. Inv. Co., 226 Mo. 148. (4) Defendants are entitled to equitable relief on the ground that it will prevent a multiplicity of suits and that the court having become possessed of the cause will retain control of it until it has accomplished complete justice between the parties, and the enforcement of a city ordinance is no exception to the rule. Coal Co. v. St. Louis, 130 Mo. 323; Pomeroy's Eq. Jur. (3 Ed.), secs. 251 and 236; Dillon, Mun. Corp. (5 Ed.), sec. 727; Watertown v. Mayo, 109 Mass. 315; Houlton v. Titcomb, 102 Me. 273; Watertown v. Cowen, 4 Paige (N. Y.) 510; Cohoes v. Delaware, 134 N. Y. 397; Savings Trust v. Collonious, 63 Mo. 295; McCollum v. Boughton, 132 Mo. 601.

BOND, C.—Plaintiff is a Missouri corporation and is the owner of a sign painting and general advertising business, carried on in Kansas City, Missouri, in the conduct of which it owns and uses about three hundred bill boards, bulletin boards and other structures, some of which are rented to advertisers under contracts requiring their maintenance for the benefit of the lessees.

Plaintiff brought this suit to avoid and enjoin the provisions of an ordinance which had been passed by Kansas City on the 21st of September, 1905, to regulate the erection and maintenance of signs, bill boards and for other purposes, for the alleged reason that it is unreasonable, oppressive and confiscatory; that it

does not have uniform operation as to the classes to which it applies; and that it deprives the owners of lands adjoining the street of the right to use the same without compensation. The ordinance was, to-wit:

## AN ORDINANCE

Regulating the Erection and Maintenance of Signs and Bill Boards; Providing for the Issuance of Permits for Their Construction; and Providing Penalty for Violation Thereof.

*Be It Ordained by the Common Council of Kansas City:*

Section 1. No person, firm or corporation shall erect or maintain within the city limits, any bill board or other board, fence, sign or structure erected for advertising purposes, or upon which any advertisement is shown, painted or displayed in any way, except as is hereafter in this ordinance specified.

Section 2. No bill board or other board, fence, sign or structure erected for advertising purposes, or upon which any advertisement is shown, painted or displayed in any way, shall be erected or maintained nearer to the street line than twelve feet, and same shall not exceed in height ten feet from the lower to the upper edge, and the lower edge must not at any point be higher than two feet above the surface of the ground.

Section 3. All bill boards or other boards, described in section 1 of this ordinance, shall be so constructed as to leave a clear space of at least eighteen inches between the lower edge of said bill board or other board and the surface of the ground.

Section 4. It shall be unlawful to erect or maintain any bill board or other board, fence, sign or structure erected for advertising purposes, or upon which any advertisement is shown, painted or displayed, at any place within one hundred feet of the line of any public park or boulevard, except such small signs as are designated in section 6 of this ordinance.

Section 5. All bill boards or other boards, fence, sign or structure erected for advertising purposes, or upon which any advertisement is shown, painted or displayed, shall be erected on a straight line or lines. The ends of all of such boards must be at least three feet distant from any wall or fence, or other obstruction which would prevent a clear passage around the ends.

Section 6. The provisions of this ordinance shall not apply to small sign boards, not exceeding ten square feet.

Section 7. It shall be unlawful to post or display on any bill board or advertising sign, any indecent, immoral or lascivious picture or design such as would exercise an immoral or improper influence on the minds of children and youth.

Section 8.   No person, firm or corporation shall hereafter erect or maintain within the city limits, any bill board or other board, fence, sign or structure erected for advertising purposes, or upon which any advertisement is shown, painted or displayed, without first procuring a permit for such from the superintendent of buildings, and paying therefor a fee of fifty cents for each fifty feet or fraction thereof in length of said bill board, fence or sign.   At least twenty-four hours before applying for such permit, notice of application must be given to the superintendent of buildings, which said notice must contain full information concerning the construction, location and dimensions of such bill board, fence or sign.   If the said superintendent finds that such application is for a lawful purpose, and that the proposed bill board, fence or sign is in compliance with the provisions of the city ordinance he shall issue such a permit to the person, firm or corporation applying therefor.

Section 9.   The construction, anchorage and support of all signs and boards referred to in this ordinance shall be satisfactory to the superintendent of buildings, who shall condemn any that is found to be unsafe.   All boards or signs now being maintained in manners or places not in conformity with this ordinance, shall within six months after the passage thereof, be torn down and removed, unless the same are altered so as to comply with the provisions of this ordinance, and a permit obtained from the superintendent of buildings as herein provided.

Section 10.   It shall be the duty of the superintendent of buildings to see that the provisions of this ordinance are enforced.   Every day that any board, sign or device of any kind is maintained or is in the course of construction contrary to the provisions of this ordinance or shall contain any advertisements prohibited by section 7 of this ordinance shall constitute a separate and distinct violation thereof, and upon conviction of such violation, any person, firm or corporation thus convicted shall be fined in a sum not less than ten dollars nor more than one hundred dollars for each offense.

Section 11.   All ordinances or parts of ordinances in conflict with this ordinance, are, in so far as they so conflict, hereby repealed.

To this petition, the city and the mayor and the superintendent of buildings made answer, admitting the due enactment of the ordinance attacked in plaintiff's petition, and admitting that plaintiff had constructed and was maintaining the bill boards and

boards for advertising purposes at the locations described in its petition; but denying that such bill boards and other structures were maintained in a safe, substantial and workmanlike manner, or that they were in a safe and secure condition; and averring that they were constructed and being maintained in violation of said ordinance, in that they were more than ten feet high, were nearer the street line than twelve feet; a great number of them were built so as to extend from the ground up; and that no open space was left on the sides; that they were erected of cheap, inferior lumber, insecurely fastened, and a large number of them had fallen down of their own weight, and many others had been and were from day to day blown down by the wind and had fallen across the sidewalks and public highways of Kansas City; that they constituted a serious menace to the safety of the people; that they increased the fire risks, retarded the work of the fire department, and afforded lurking places for criminals, shut off the air, increased the heat of the sidewalks, were receptacles for disease-breeding offal and rubbish, and were covered with immoral advertisements. Defendants then alleged by way of counterclaim certain statements which constituted the substance of a cross-bill in equity, reciting, among other things, the passage of the ordinance, and setting it out, and repeating all the allegations in the former part of their answer as to the kind of bill boards, bulletin boards and structures belonging to the defendant which it was maintaining, and the damage and injury caused and threatened by them to the citizens of Kansas City; and averring that, as now located, they are and have been for years past a public nuisance and a serious menace to the safety and welfare of the people; that many persons had been injured by their existence and maintenance; that those erected by plaintiff covered more than three miles of lineal surface; that plaintiff was threatening to continue to maintain said boards in

defiance of said ordinance, in defiance of law, and in defiance of the right of the people; wherefore, defendants prayed for an injunction restraining plaintiff from the further maintenance of the bill boards described in its petition or any other bill boards except in accordance with the requirements of said ordinance, and praying for general relief.

Plaintiff replied to the answer of defendants' cross-bill, admitting the provisions of the ordinance regulating the construction and maintenance of bill boards and other bulletins and other advertising structures; denied other allegations, and asked for the relief set out in its petition.

The court granted plaintiff a temporary injunction upon the execution of a bond in the sum of $15,000, and afterwards the parties stipulated that the cause might be heard by the court upon the pleadings and evidence admitted on the trial on the application for a temporary injunction, subject to the same objections as had been then made. The case was heard upon the affidavits and photographs filed by the parties. The court made a finding of facts upon the request of defendants, which, as far as material, will be adverted to in the opinion. The court found the conditions in Kansas City were such at the time of the trial, that the regulation of bill boards and bulletin boards was a public necessity; that the ordinance passed was reasonable in all respects, with two exceptions, noted in its decree. The court rendered its judgment enjoining defendants from tearing down or removing or in any way injuring all such bulletin boards and sign boards of the plaintiff as were erected prior to September 21, 1905, while they were kept in repair and not maintained on any public street of Kansas City; and enjoining defendants from interfering with fences, structures or walls, if any, enclosing lands, or constituting parts of buildings, owned or leased by plaintiff and devoted to advertising purposes; and enjoining de-

fendants from enforcing or attempting to enforce section 4 of said ordinance. The court also enjoined the plaintiff from constructing or reconstructing, within the corporate limits of Kansas City, as they now exist, any sign, bulletin board or bill board nearer than twelve (12) feet to the line of any public street or highway, which shall exceed ten (10) feet in height or which shall fail to conform to the provisions of said ordinance No. 30255 of Kansas City, entitled "An Ordinance Regulating the Erection and Maintenance of Signs and Bulletin Boards; Providing for the issuance of Permits for Their Construction, and Providing Penalty for the Violation Thereof," approved September 21, 1905 (except as to section 4 of said ordinance).

Both parties duly excepted and perfected their appeals to this court.

The only evidence adduced was in the form of affidavits and photographs, and so far as necessary will be referred to in the opinion.

The error assigned by plaintiff is the refusal of the court to find that the ordinance was void in toto, and to enjoin all enforcement thereof. The error assigned by the defendants is the refusal of the court to extend the injunction granted by its judgment so as to prohibit the maintenance of any and all bill boards previously erected by plaintiff, after a lapse of six months from its passage, in a condition contrary to the provisions of the ordinance.

## OPINION.

I. The first question presented on this appeal is the validity of the ordinance quoted in the statement. The counsel for the city conceded in oral argument that section 4 of the ordinance was void. We are inclined to assent to that view, and will discuss the ordinance as if section 4 was expunged. This section is not one upon which any other section or provision of

the ordinance is dependent, hence its elision will not affect the remainder if that is otherwise constitutional and valid. [St. Louis Ry. Co. v. Southern Ry. Co., 105 Mo. l. c. 590; Lamar v. Weidman, 57 Mo. App. 507.]

The power to pass this ordinance is derivable from the charter of Kansas City, 1889, art. 1, sec. 1, p. 31, and paragraph 10 of the same section. By these provisions of its charter, the mayor and common council are granted power to pass all ordinances . . . not inconsistent with the provisions of the charter or the laws of the State, "as may be expedient in maintaining the peace, order, good government, health and welfare of the city; and to license, tax and regulate all occupations, professions and trades not heretofore enumerated of whatever name or character." It is evident from these terms of the charter of the defendant city, that its enactment of this ordinance was an exercise of the inalienable police power devolved upon it as an auxiliary to the State government. Within that sphere of action, its ordinances have all the force of laws, and its mayor and common council are a "miniature general assembly." [Taylor v. City of Carondelet, 22 Mo. l. c. 112; City of St. Louis v. Foster, 52 Mo. l. c. 515; Union Depot Ry. Co. v. Southern Ry. Co., 105 Mo. l. c. 575; Jackson v. Grand Ave. Ry. Co., 118 Mo. l. c. 218-219; State ex rel. v. Brown, 57 Mo. App. l. c. 206.] The power to pass this ordinance being thus seen to flow from an ample source found in the charter, the next question is whether its exercise was justified by existing conditions.

The evidence relating to the present case and to a similar suit, brought by the Thomas Cusack Company, which was tried with this case, disclosed, in substance, that about ten miles of linear measurement in the limits of Kansas City were occupied by different concerns engaged in the erection and maintenance of bill boards, bulletin boards and other structures for

advertising purposes. The evidence was in the form of affidavits and photographs, and afforded cogent and ocular proof of the necessity for immediate action by the municipal authority to protect the health and safety of its citizens by prescribing adequate safeguards against improper and misplaced bill boards and dangerous and threatening structures used by these advertising concerns, which the evidence tended to prove had become places of resort for criminals, receptacles for filth, garbage and other refuse, as well as obstacles to the work of the fire and police departments, and were constructed of decayed material and maintained in a threatening condition; that they intensified the heat by reflecting the sun's rays in the streets; and in many instances displayed placards of drinking orgies between men and ill clad women.

The evidence relating to the bill boards, bulletin boards and advertising structures owned by the plaintiff did not show that they were as insecure and dangerous as those belonging to the other persons, nor did it show that plaintiff's bill boards or bulletin boards exhibited any immoral displays; but it did show that plaintiff's advertising structures, owing to their lack of conformity to the requirements of the ordinance, were so located and maintained as to constitute a serious menace to the people of Kansas City; that they interfered with the extinction of fires by the fire department, and, by their improper height and size, assisted in the spread of fires and obstructed the work of the fire department; and that in order to remedy these evils they should be made to conform to the provisions of the ordinance under consideration. Evidence of these facts was given in the affidavit of Edward Trickett, chief of the fire department, which mentions the plaintiff company by name as being one of the concerns which maintained such bill boards. The condition of the bill boards belonging to plaintiff was further disclosed by the affidavit of W. C. Brooks,

superintendent of streets, which shows that plaintiff was *one* of the four owners of the bill boards referred to therein, in the following language: "These bill boards have become very dangerous to life, limb and property in Kansas City, and it is a matter of universal knowledge that bill boards and advertising boards which have been constructed apparently in as safe manner by all of the above four companies have fallen or blown over upon the sidewalks at frequent intervals; and that many persons have been seriously injured thereby." In addition to the statements of these two affiants, each of which specifically *named* the plaintiff company as being engaged in the maintenance of the sort of structures described, there was the testimony of the mayor of the city, that the general condition of the bill boards in said city was such that it inflicted suffering by overheating the streets; "that they are used as lurking places for criminals; that nuisances are committed behind them; papers and old rubbish is concealed; and that they have caused serious loss of property by delaying the fire department in its work of extinguishing fires." The superintendent of buildings in referring to the situation in the spring of 1905 stated that "the bill boards and advertising structures had accumulated so rapidly and had been built with such disregard for the safety of life and property, that his office was overwhelmed with complaints from a large number of people; . . . that in the month of May, 1905, . . . about twenty persons were injured from bill boards which were apparently safe . . . ; that the fire department was delayed in its work of extinguishing fires, and much loss of property resulted." He further stated that the ordinance in question was passed after full discussion before the council and before committees who had investigated its merits prior to its passage, and that the bill board proprietors were present and took part in the deliberations, and many of the provisions were

inserted at their request, and the ordinance in its final form was the result, in which the representatives of the leading bill board companies took part, who agreed that the six months allowed for putting back the boards the twelve feet from the sidewalks and reducing the height thereof "was reasonable and fair." The testimony as to the general condition of bill boards in Kansas City, and as to the bill boards owned by plaintiff, amply sustained the finding of the trial court, that the passage of the aforesaid regulatory ordinance was indispensably necessary to the public welfare. We do not see how any other conclusion could have been reached in the light of the ruling of this court, in Banc, upon the pleadings and facts shown in the case of St. Louis Gunning Advertising Co. v. City of St. Louis, 235 Mo. l. c. 200. In that case, after an exhaustive discussion of all the appurtenant decisions in this State and elsewhere, the court, speaking through Judge Woodson, formulated three propositions conclusive of the validity of an ordinance similar to the present and passed to meet similar conditions, in the following language:

"First, that municipal corporations, even under their general police powers, may, by ordinance, exercise reasonable control over the construction and maintenance of bill boards, house signs and sky signs.

"Second, that said power to regulate said matters begins where the public safety, health, morals and good government demand such regulation, and ends where those public interests will not be beneficially served thereby.

"And, third, that the mere unsightliness of bill boards and of similar structures, as well as their failure to conform to esthetics, is no valid reason for their total or partial suppression."

This specification of the requisites essential to the validity of an ordinance like the present was made

after a full discussion of every point of attack upon the power of municipal bodies under charter provisions like those shown in the present case to enact such ordinances; for in that case, as in this case, the ordinance was attacked as unreasonable, as class legislation and as confiscatory; and in each instance the court ruled that there was no merit in these contentions. Since it was within the power and the clear duty of a municipal body to pass such an ordinance whenever the existing facts showed it was necessary to the safety and welfare of the public, morally and physically, that being the highest end of all government, state or municipal.

In view of this ruling and the finding of the trial court, upon ample testimony in the record, that the time was ripe for action by Kansas City, we hold that the present ordinance was a valid and constitutional enactment and a salutary and necessary measure of public protection as to each and every provision therein except section 4.

II. Counsel for plaintiff also urge that some words in the ordinance are susceptible of the construction that would prevent the placing of proper advertising upon the wall of an integral building or the side of a fence surrounding a lot if such structures happened to exist within the limits of proximity to the street line which the ordinance intended to neutralize. We do not think this a fair interpretation of the ordinance nor that the legislators had any such intention. The ordinance was directed against the improper erection and maintenance of structures for advertising purposes within a fixed distance from the street line. It had no purpose to prohibit the use of a side of a house erected for residence purposes or an enclosing fence to guard property, which trenched within the distance required to be kept clear by the ordinance, by affixing to either of them innocent advertising dis-

plays. Nor can any such meaning be ascribed to any language of the ordinance if given its usual and ordinary import.

We, therefore, hold that there is nothing in any provision of the ordinance which warrants the criticism thus attempted to be made, and that the trial court misconceived the true meaning of the ordinance in holding that it forbade the display of proper advertising on any such structures, or was intended to compel the removal of such structures.

III. The next question presented by this appeal is the measure of relief to the respective parties under the pleadings and proof. This question, as far as plaintiff is concerned, has been completely answered by what has been ruled above, to the effect that the plaintiff is entitled to no relief except an injunction against the enforcement of section 4 of said ordinance. The only remaining inquiry is, What relief should be accorded defendants in this action? The object of the cross-bills of defendants is to secure the enforcement of the ordinance by a mandatory injunction. The ordinance is a quasi-criminal enactment. Its sanction is a fine against the owner and the prevention of his injurious use of his property by causing its removal so as to conform to the ordinance in the event he should continue, after the passage of the ordinance and beyond the time limit for compliance therewith. to use his property to the public detriment as defined in said ordinance.

The jurisdiction of equity to prevent irreparable injury to property is not devested by the fact that the act to be enjoined may also be a violation of the criminal law; neither does a court of equity lack power to enjoin the continuance of a public nuisance. Its action in these instances is incidental and grows out of its inherent jurisdiction to protect property rights from destruction and to conserve the morals of the

people. [Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212; St. Louis v. Canty, 207 Mo. 1. c. 459-460.] But a court of chancery is not a medium for the enforcement of the criminal law, hence it scans closely transactions having that aspect before entertaining jurisdiction. It may be that an exigency could arise which would warrant a suit in equity to enjoin the plaintiff and other persons from violating the terms of the ordinance under review, but we do not think that it now exists.

The ordinance passed by Kansas City in the proper exercise of its governmental power contains within itself the efficient means of enforcement against this plaintiff and all other persons affected thereby. It points out in terms (sections 9 and 10) the proper methods by which and the time within which obedience to its commands may be compelled, thus affording to the city a full, complete and unembarrassed remedy by legal procedure, and leaving no present basis for its countersuit in equity. [State ex rel. v. Wood, 155 Mo. 1. c. 447.]

This was an ordinance in pursuance of the police power of the city and enacted upon an adequate showing of public necessity. Such ordinances are enforceable, when otherwise valid, *in praesenti* as well as *in futuro*. They do not in a legal sense *take* the property of persons against whom they are directed. They simply *regulate* the use of such property by prohibiting its injurious or criminal use by the owner, and hence they do not offend (as claimed by plaintiff) any provision of the organic law protecting vested interests or inhibiting retrospective legislation. This is typified by the provisions of the ordinance under review. None of them either in words or by intendment deprived the plaintiff of the use of any of its property prior to the adoption of the ordinance. They merely require plaintiff and all others similarly situated to refrain from the use or maintenance of their property

*after* the passage of the ordinance, in a manner which that enactment conclusively determines to be unlawful and injurious. The correctness of these views is demonstrated by the reasoning of Judge Graves in the case of St. Louis v. Commission Investment Co., 226 Mo. l. c. 157, which was a construction of a fire ordinance. The court held that it governed the subsequent maintenance of pre-existing structures, as well as the erection of new ones; and that such prior structures were removable so as to conform to the provisions of the ordinance. The same principle was enunciated by Valliant, C. J., in a case where an ordinance of the city regulating the mixing and making of materials in the public street was attacked on the ground that it was contrary to a previous contract executed by the city. In reply to that the court said: "The city has a dual character, administrative and governmental. In its contract for street improvements it acts in its administrative capacity, and, to some extent, is on a plane with any other party to a business contract. But in the exercise of its police power to protect life and health it acts in its governmental capacity and is not estopped by its contract; it could not abandon its duty in that respect even if it willed to do so." [State ex rel. v. St. Louis, 207 Mo. l. c. 364-365. To the same effect, State v. Heger, 194 Mo. l. c. 715.]

Under these rulings it is clear that the ordinance before us became operative against plaintiff and other persons similarly situated on the date of its passage and after the lapse of the time therein specified, both as to future erections of bill boards, bulletin boards and other advertising structures, and as to the future maintenance of any which had been erected previously to the passage of the ordinance; and that the city was lawfully empowered to compel full compliance with each and all of the provisions of said ordinance except section 4. Hence we overrule the contention that any other sections or provisions of said ordinance were in

terms or legal effect retrospective or destructive of any vested rights of the plaintiff.

IV. It follows that there is no impediment in the way of a full enforcement of all the provisions of said ordinance (except section 4) in the manner therein specified and defined, and plaintiff had the full measure of relief to which it was entitled by the injunction awarded against the enforcement of section 4; and that its bill should have been dismissed as to all other purposes and objects; and that the cross-bill filed by defendants should not have been sustained, for the reason that the city has a full, complete and unembarrassed remedy at law in the manner pointed out in its ordinance to enforce all the provisions thereof, except section 4, at once against plaintiff and other owners of bill boards, bulletin boards and advertising structures.

The judgment is reversed and the cause is remanded with directions that the court shall enter a decree in conformity with this opinion. Let the costs of both courts be equally divided between the plaintiff and the defendant city.

*Brown,* C., concurs.

PER CURIAM.—The foregoing opinion by BOND, C., in Division One, is adopted as the opinion of the Court in Banc. All concur except *Graves* and *Brown,* *JJ.,* who dissent for the reasons expressed by *Graves,* *J.,* in his dissenting opinion in the St. Louis cases, 235 Mo. 99.