STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Appellant-Plaintiff,

v.

Don HEIL, Anton H. and Elizabeth H. Ritter, Respondents-Defendants.

No. 40459.

Missouri Court of Appeals, Eastern District, Division Two.

March 18, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Application to Transfer Denied May 13, 1980.

Dennis J. Redel, Legal Division, State Highway Commission, Jefferson City, for appellant-plaintiff.

David G. Beeson, Buerkle, Lowes & Beeson, Jackson, for respondents-defendants.

STEWART, Judge.

State Highway Commission of Missouri (Commission) petitioned the Circuit Court for mandatory injunction that would require defendants to remove a sign along Interstate Highway 55. The Circuit Court rendered judgment for defendants.

We affirm.

Essential to our consideration of this case is what is known as the Billboard Act §§ 226.500–226.600 RSMo.1969, *as amended,* (Supp.1973, 1976). This act has as its purpose the regulation of signs along interstate and primary highway systems. Without going into great detail, the act, among other things, prohibits the erection and maintenance of outdoor advertising signs which would be within 660 feet of the nearest edge of the highway right of way and visible from the main traveled way of such highways with certain exceptions. Among the exceptions is "[o]utdoor advertising located in unzoned commercial or industrial areas as defined and determined pursuant to sections 226.500 to 226.600." § 226.520(4) RSMo.1976.

Unzoned commercial and industrial land is defined in § 226.540(4) RSMo.1976 as:

"That area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity." § 226.540(4) RSMo.1976.

In other words outdoor advertising is permissible within 600 feet of a commercial or industrial activity provided a permit is obtained from the Commission in accordance with the act. See *National Advertising Co. v. State Highway Commission,* 549 S.W.2d 536 (Mo.App.1977). Provisions are also made for enforcement of the act as discussed hereafter.

Defendant Ritter, as the owner of a farm, leased the side of his barn to defendant Heil who had an advertising sign painted on the barn. The Commission determined that the sign was in violation of the act and sent defendant Ritter and defendant Heil notice to remove the sign. Neither of them sought administrative review nor did they seek the alternative remedy of judicial review of the Commission's determination as provided in § 226.580–3 RSMo.1976.[1] Defendant Heil, however, filed an application for a permit prior to the time this case was tried. Under the circumstances the statute authorizes the Commission to remove the sign, in this instance by painting it out, at the owner's expense. Defendant Anton Ritter refused to allow the Commission to remove the sign at Ritter's expense and Defendant Heil refused to remove the sign.

On October 20, 1976, about seven months after the time for obtaining a review of the Commission's determination had passed, the Commission filed this action. The petition alleges that the sign on the barn was in

---

1. The pertinent portions of § 226.580–3 read: "Within thirty days after receipt of the notice as to him, the owner of the land or of the structure . . . may file an action for administrative review pursuant to the provisions of sections 536.067 to 536.090, RSMo, to review the action of the state highway commission, or he may proceed under the provisions of section 536.150, RSMo, as if the act of the highway commission was one not subject to administrative review."

violation of the Billboard Act in that it was within 660 feet of Commission's right of way and had not been issued a valid permit, and that it did not come within any exception set out in the statute. Commission also alleges that the defendants had been given notification to remove the sign, that they did not seek review of Commission determination, and that they did not remove or permit removal of the sign.

Our review of this case depends upon the nature of this action, which in turn also raises the question of the jurisdiction of the Circuit Court to entertain the action. The manner in which this case was tried presents us with a multitude of problems in making these determinations. Commission urges as an alternative point that this is an action to enforce the administrative determination of the Commission.

The parties stipulated that there was only one factual issue to be tried. As stated in the trial court "[i]ts been stipulated that the only question of fact, within the meaning of the statute, is whether or not there is a commercial activity within 600 feet of the existing sign adjacent to Interstate 55." It is conceded that at the time the administrative determination was made, in 1975 and 1976, the sign was in violation of the statute. In 1977 the Ritters started selling gravel upon their property and sales were being made up to the time of trial. The case was tried by the parties upon the facts as they existed March 7, 1978, the date of trial. Even Commission states in the first portion of its argument that the case is to be reviewed as cases in equity in accordance with Rule 73.01–3. Counsel for Commission, having in mind the fact that an application for a permit had been sought with no action taken by Commission, also stated:

"I feel that the highway commission in this case could take the position that the sign was illegally erected anyway, and that we would require it be removed and then go through the proper procedures. As a practical matter we're not taking that position because it would be frivolous to have them tear it down and build it right back up again."

As can be seen the parties did not try this case as an action to enforce the original determination of the Commission that the sign was unlawful. The theory upon which the case was tried treats the action as an independent de novo action for a mandatory injunction. We believe that such a proceeding can be utilized because the primary purpose of the Billboard Act is to see that unlawful signs are removed. In making this determination we are mindful of *Kansas City Gunning Advertising Co. v. Kansas City*, 240 Mo. 659, 144 S.W. 1099, 1103 (banc 1912) in which it is said that "a court of chancery is not a medium for the enforcement of the criminal law, hence it scans closely transactions having that aspect before entertaining jurisdiction." The purpose of the statute under consideration here is "[t]o promote highway safety, to promote convenience and enjoyment of highway travel, and to preserve the natural scenic beauty of highways and adjacent areas." § 226.500 RSMo.1969. The statute partakes of a remedial rather than a penal nature even though violation of the statute may be prosecuted as a misdemeanor. § 226.600 RSMo.1969. Considering the statutory purpose and the fact that Commission had experienced difficulty in having the sign removed we believe that the action partakes of the nature of an action to abate a public nuisance. *City of St. Louis v. Friedman*, 358 Mo. 681, 216 S.W.2d 475 (1949). We conclude that the action was an independent action brought to enforce alleged violations of the Billboard Act and that the trial court had jurisdiction to hear the cause. We review this case as an equitable action. The guide lines for our review have been so often stated that they need not be repeated here. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Defendants have moved to dismiss the appeal because of defects in Commission's brief. While we cannot commend Commission on its brief, the first Point Relied On sufficiently directs us to the essential issues to be raised by both Points I and II. It was also incumbent upon us to determine the nature of our review which was raised in

defendant's third point, before addressing the first two points. Further, it is apparent that our consideration of the merits of this cause works no hardship upon defendants whose brief is not without deficiencies.

The trial court found that the sign was a lawful sign within the meaning and intent of the Billboard Act and that Anton Ritter carries on a bona fide commercial business within 600 feet of the sign.

■ There are essentially two issues. Was there sufficient substantial evidence from which the court could find that there was a commercial activity in the vicinity of the barn and if so was there sufficient substantial evidence the sign was within 600 feet of that activity?

In mid 1977 defendant Ritter began selling gravel from his property. He registered with the Office of Secretary of State under the Fictitious Name Statute, §§ 417.-200–417.230 RSMo.1969, as Tony's Gravel Company. He also obtained a Missouri Retail Sales License.

Mr. Ritter removed gravel from the creek that runs through his property with a back hoe and placed it in piles upon the ground. He built a road to the gravel piles and the pit from which he dug the gravel so that he could dig the gravel and so that trucks could get to the gravel piles to load the gravel. This road comes off of what might be described as an access road that parallels I–55. This road is used exclusively in the gravel operation. There is a sign at the gravel piles advertising "Gravel For Sale" and giving defendant Ritter's telephone number.

To determine whether Ritter is engaged in a commercial activity within the exception we look first to the definitions found in § 226.540:

"(5) 'Commercial or industrial activities' as used herein shall mean those which are generally recognized as commercial or industrial by zoning authorities in this state, except that none of the following shall be considered commercial or industrial:

(a) Outdoor advertising structures;

(b) Agricultural, forestry, ranching, grazing, farming, and related activities, including seasonal roadside fresh produce stands;

(c) Transient or temporary activities;

(d) Activities more than six hundred sixty feet from the nearest edge of the right-of-way or not visible from the main traveled way;

(e) Activities conducted in a building principally used as a residence;

(f) Railroad tracks and minor sidings."

The Ritters' gravel business does not come within any of the exceptions listed immediately above. In *Reiser v. Meyer*, 323 S.W.2d 514 (Mo.App.1959), cited by all of the parties, the word "commercial" as used by zoning authorities is defined by the court at page 521:

"The term 'commercial,' in its broad sense comprehends all business, while in a narrow sense it includes only those enterprises engaged in buying and selling goods and services. . . . In the case of *State ex rel. Kansas City Power & Light Co. v. Smith*, 342 Mo. 75, 111 S.W.2d 513, loc. cit. 515, the court said: 'The ordinarily accepted use of the phrase "commercial establishment" denotes a place where commodities are exchanged, bought, or sold, * * *.' When the term 'commercial' is limited to the purchase and sale or exchange of goods and commodities, it is said to be used in a narrow and restricted sense. 15 C.J.S. Commercial page 576."

Whether we consider the word "commercial" in its broad sense or in the narrow, restricted sense, Ritter conducted a commercial activity on the property. Ritter sold the commodity that he obtained from the gravel pit to persons who came to the pit and to those to whom he delivered for a consideration. The evidence of actual sales from the time he started selling gravel up to the time of trial would indicate that his was a legitimate commercial enterprise and the trial court could so find.

■ The evidence with respect to whether the commercial activity is within 600 feet of the advertising sign is in conflict. An

employee of the Highway Commission testified that his measurements indicated that the distance was between 706 and 750 feet. Mr. Ritter testified that the road he built to permit access to the gravel pit and the gravel piles is half way between the gravel pits and the barn, and that the distance between the road and the barn to be about 300 feet. He was asked whether it was "[a]pproximately the same distance than also to the gravel pit?" to which he answered "[a]bout half the distance."

We can find no evidence of record that the barn was used in the gravel business as stated by defendants in their brief nor is there sufficient evidence to warrant a finding that the abandoned house near the barn was regularly used in the conduct of the business although there is a vague reference to some payment for gravel being made at the house. The trial court was warranted however, in finding that the road was built specifically to serve only the gravel operation and used solely for that purpose and that the road as a part of the commercial activity was within 600 feet of the sign. The court could also find from the testimony of Mr. Ritter that the distance from the gravel piles to the barn was 600 feet. It is to be remembered that Mr. Ritter testified that the road was half way between the gravel piles and the barn, that the distance between the road and the barn was 300 feet. By simple mathematics the distance between the commercial activity and the sign is 600 feet.

There was sufficient substantial evidence to support the findings of the court and the judgment of the court does not misinterpret or misapply the law. The judgment of the trial court is affirmed.

STEPHAN, P. J., and KELLY, J., concur.