Dear Representative Goldman:
This opinion is in response to your questions asking:
 1. Is a for profit apartment building a commercial facility within the meaning of Chapter 349 of the Revised Statutes of Missouri?
 2. Is the for profit construction of an apartment building that will be operated on a not-for-profit basis after the period of construction a "commercial facility" within the meaning of Chapter 349, Revised Statutes of Missouri?
Generally, Chapter 349 provides for the organization of Industrial Development Corporations within counties and municipalities to develop commercial, industrial, agricultural or manufacturing facilities. In 1980, the 80th General Assembly passed C.C.S.H.C.S.H.B. 1582 and 1277 which repealed and reenacted, inter alia, Section349.010, which now provides:
 (4) "Project" means the purchase, construction, extension and improvement of plants, buildings, structures, or facilities, whether or not now in existence, including the real estate, used or to be used as a factory, assembly plant, manufacturing plant, processing plant, fabricating plant, distribution center, warehouse building, waterborne vessels excepting commercial passenger vessels for hire in a city not within a county built prior to 1950, office building, commercial or agricultural facility, or facilities for the prevention, reduction or control of pollution. Included in all of the above shall be any required fixtures, equipment and machinery. Excluded are facilities designed for the sale or distribution to the public of electricity, gas, water or telephone, together with any other facilities commonly classified as public utilities. Projects of a municipal authority must be located wholly within the incorporated limits of the municipality except that such projects may be located outside the corporate limits of such municipality and within the county in which the municipality is located with permission of the governing board of the county. Projects of a county authority must be located within an unincorporated area of such county except that such projects may be located within the incorporated limits of a municipality within such county, when approved by the governing body of the municipality. (language added by C.C.S.H.C.S.H.B. 1582 and 1277, 80th General Assembly, emphasized.)
Our task in rendering this opinion is to seek the intent of the legislature. This is the cardinal rule of statutory construction.State ex rel. Ashcroft v. Union Electric Co., 559 S.W.2d 216
(Mo.App. 1977). Additionally, we must assign the words employed by the legislature their plain, ordinary meaning. Beiser v.Parkway School Dist., 589 S.W.2d 277 (Mo. banc 1979).
Thus, of central import to the resolution of this opinion is the intent of the legislature in amending Section 349.010 to include commercial facilities. Courts generally have afforded the term "commercial" both a broad and a narrow meaning.
 The term "commercial" in its broad sense comprehends all business, while in a narrow sense it includes only those enterprises engaged in buying and selling goods and services. Reiser
v. Meyer, 323 S.W.2d 514, 521 (Mo.App. 1959).
See also State ex rel. State Highway Commission v. Heil,597 S.W.2d 257, 260 (Mo.App. 1980); Lanski v. Montealegre,104 N.W.2d 772 (Mich. 1960); 15A C.J.S. Commercial § 1.
There exists a line of cases which holds that apartment buildings are commercial enterprises. In Philadelphia SuburbanWater Co. v. Pennsylvania Public Utility Commission,64 A.2d 500 (Pa. 1949), the Pennsylvania Superior Court held that an eleven unit apartment building was commercial for purposes of obtaining a commercial service connection under the Philadelphia Suburban Water Company's tariff. That court stated:
 Only by a narrow construction of the word "commercial" could it be decided that the operation of an apartment development like Colonial's is not a commercial activity. Id. at 503.
In District of Columbia v. Wardell, 122 F.2d 202 (D.C.App. 1941), the court held that rents collected from the operation of apartment houses "were derived from a `business * * * or commercial activity' within the meaning of the [District of Columbia] Revenue Act." Id at 203.
More recently, the Supreme Court of Vermont, in Lewis v.Town of Brandon, 313 A.2d 673 (Vt. 1973), held that an apartment building was commercial property, stating:
 The primary purpose of commercial property is to produce an income of profit for the owner. The primary purpose of owning apartment buildings is to realize an income or profit from rentals. The property owned by the plaintiffs [apartment owners] constitutes commercial property . . . . Id. at 676.
In State ex rel. Jardon v. Industrial Development Authorityof Jasper County, 570 S.W.2d 666 (Mo. banc 1978), the Missouri Supreme Court held that the financing of the construction of an office building through industrial revenue bonds was permitted by Chapter 349. The court expressed the legislature's purpose in permitting the establishment of industrial development corporations as being, inter alia, "improved employment and stimulation of the economy. . . ." Id. at 675.
We believe that the cases cited, read in the light of the Missouri Supreme Court's broad interpretation of Chapter 349 to give effect to the legislature's intention, in Jardon, supra, are persuasive. Accordingly, it is our opinion that a for profit apartment building is a commercial facility within the meaning of Chapter 349.
With regard to your second question, we understand that the construction of an apartment building for profit, financed with bonds issued by an industrial development corporation, is contemplated. Upon completion of the construction, the developer will sell the complex to a public housing authority at a profit to the developer, provided the completed structure is satisfactory to the housing authority. The public housing authority is a not-for-profit entity.
We believe that the ultimate purpose for which a commercial facility is constructed is irrelevant to its characterization as a commercial facility and, therefore, its ability to qualify for financing under Chapter 349.
In In Re Spring Valley Development, 300 A.2d 736 (Me. 1973), the Maine Supreme Court predicated its determination of commercial on the purpose of the activity.
 We think that the use of the word "commercial" was intended to describe the motivation for the development and not the type of activity to be performed on the property after it is developed. (Emphasis added). Id. at 742.
The developer's motivation in the fact situation you pose is to return a profit. Should the public housing authority fail to purchase the apartment, the developer may operate the project himself or sell it to a profit-oriented entity. We certainly cannot predict the future. Therefore, having determined that an apartment is a commercial facility, we conclude that its future use is not determinative of the ability of an industrial development corporation to finance it under Chapter 349.
Very truly yours,
 JOHN ASHCROFT Attorney General