FRED STEGMANN et al., Appellants, v. HENRY L. WEEKE, Commissioner of Weights and Measures of City of St. Louis.

(No. 21, 152)

Division Two, July 5, 1919.

1. **WEIGHTS AND MEASURES: Legislative Power: Invasion of Right to Contract.** For the purpose of protecting the public and consumers from fraud and imposition in their purchase of commodities, the Legislature has the right, as a police regulation, to regulate weights and measures, and delegate that authority to municipal corporations, in so far as they exercise police powers; but the regulation must not be such as to invade the constitutional right to make contracts.

Stegmann v. Weeke.

2. ———: ———: ———: Reasonable Restrictions. A legislative exercise of the police power to fix weights and measures necessarily limits the freedom of contract that would otherwise exist; but so long as the restriction has a reasonable relation to the exercise of the power and is not so arbitrary or capricious as to be a deprivation of due process of law, freedom of contract in the constitutional sense is not interfered with.

3. ———: ———: ———: Bushel Boxes According to Statute: Penalty for Use of Boxes of Different Dimensions. An ordinance establishing standard bushel and half-bushel boxes to contain the same cubical content of the bushel and half-bushel prescribed by statute, to be used by truck gardeners and farmers in selling their fruits, vegetables and other produce in the city, and prescribing a penalty for the use of boxes of a different capacity and thereby sufficiently guaranteeing that boxes of a different capacity will not be used, is not unconstitutional as impairing the obligation of contracts, although it makes unlawful the use of boxes of a less capacity which have been in general use for many years.

4. ———: Bushel Boxes of Given Dimension: No Penalty. The court may determine whether an ordinance prescribing that bushel and half-bushel boxes to be used by farmers and truck gardeners in marketing their fruits and vegetables within the city shall be of certain dimensions, is unreasonably arbitrary, and may settle the question by inspecting the face of the ordinance, or may find it unreasonable by a state of facts which affects its operation; but an ordinance which prescribes that a bushel box shall have certain dimensions and a half-bushel box certain other dimensions, but prescribes no penalty for the use of boxes of different dimensions, but only a penalty for the use of boxes of a different capacity, is not unreasonable.

Held, by FARIS, J., concurring, that the ordinance is valid only because it prescribes no penalty for the use of boxes of different dimensions, thus making the prescription that the bushel and half-bushel boxes shall have certain dimensions only advisory, and not mandatory. Held, also, that the city has no power to say that the boxes shall be of a required length, width and depth.

5. ———: ———: ———: Oppressive Enforcement: Injunction. Plaintiffs cannot have an injunction to restrain the city from pursuing some unexpected and unthreatened prosecution. If the ordinance requires plaintiffs in marketing their vegetables and produce to use boxes having the number of cubic inches prescribed by statute for bushel and half-bushel containers, and fixes a penalty for the use of boxes of different capacity, and also goes further and prescribes that boxes of those capacities shall be of certain length, breadth and width but prescribes no penalty

for the use of boxes of different dimensions, and their contention is that the ordinance interferes with their use of boxes of a smaller capacity which have long been in use, and they make no showing that they intend to use boxes of the prescribed capacity, the ordinance will not be held to be invalid on the theory that it will be interpreted to mean that they must use boxes of the specified dimensions and therefore will be oppressivoly and illegally enforced.

6. ———: **Sale By Weight.** Where the ordinance does not require the immediate purchaser from the gardeners to purchase by weight, although such purchasers are commission merchants and retail dealers who have not been deceived as to the contents of the "short" boxes long in use, yet if the commodities in the boxes can be passed on to the ultimate consumer, the city has the right, in order to provide against imposition by the use of the smaller boxes, to enact an ordinance requiring the use of boxes containing the statutory capacity of a bushel and half-bushel, and affixing a penalty for the use of boxes of different capacities.

Appeal from St. Louis City Circuit Court.— *Hon. Vital W. Garesche*, Judge.

AFFIRMED.

*Edward W. Foristel, Taylor R. Young* and *T. T. Hinde* for appellants.

(1) Courts have jurisdiction to enjoin the enforcement of an illegal ordinance. Coal Company v. City of St. Louis, 130 Mo. 323; Union Cemetery Assn. v. Kansas City, 252 Mo. 466; Jewel Tea Co. v. City of Carthage, 257 Mo. 383; Hays v. Poplar Bluff, 263 Mo. 516. (2) Sections 22 and 23, both original and amended, are not in harmony with the constitutional and statutory State provisions, and for that reason are illegal and void. St. Louis v. Meyer, 185 Mo. 593; Peterson v. Railroad, 265 Mo. 497; Sec. 9582, R. S. 1909; St. Louis v. Bernard, 249 Mo. 56; St. Louis v. Dreisoerner, 243 Mo. 223; Hays v. City of Poplar Bluff, 263 Mo. 516; Union Cemetery Assn. v. Kansas City, 252 Mo. 466; St. Louis v. Worlds Pub. Co., 270 Mo. 146; St. Louis v. King, 226 Mo. 334. (3) As to appellants, the ordinance is beyond the police power of the

city to enact, unreasonable and oppressive, and for that reason void under all the authorities above cited. (4) Appellants did not have an adequate remedy at law. Coal Company v. City of St. Louis, 130 Mo. 323; Jewel Tea Company v. Carthage, 257 Mo. 383.

*Charles R. Daues* and *H. A. Hamilton* for respondent.

(1) By its charter the City of St. Louis is expressly invested with power to inspect, test, measure and weigh any article of consumption within said city, and to establish, regulate, license and inspect weights and measures. Charter, art. 1, sec. 1, 27; Charter, art. 1, sec. 1, 28. (2) The ordinance in question having for its purpose the protection of the inhabitants of the City of St. Louis against false weights and measures, is a valid exercise of the police power of said city and is not obnoxious to any provision of the State or Federal constitutions. Sylvester Coal Co. v. St. Louis, 130 Mo. 323; State ex rel. v. Merchants Exchange, 269 Mo. 346; . Chicago v. Schmidinger, 243 Ill. 167; Schmidinger v. Chicago, 226 U. S. 578; People v. Wagner, 86 Mich. 594. (3) The City of St. Louis being authorized to establish and regulate weights and measures, may prescribe the form and dimensions of the container in which articles of consumption are marketed in said city. Turner v. State, 55 Md. 240; Turner v. Maryland, 107 U. S. 38. (4) Ordinance No. 29795, as amended, does not conflict with the Constitution or statutes of the State of Missouri, but is in complete harmony therewith. (5) The Municipal Assembly of St. Louis is vested with the power of determining the necessity of regulating business in said city, and courts will not ordinarily review the exercise of its discretion. An ordinance passed in the exercise of legal authority will not be declared void on the ground of unreasonableness unless no difference of opinion can exist upon the question, and a clear case must be made to authorize a court to interfere on that ground. St. Louis v. Weber, 44 Mo.

547; Gratiot v. Missouri Pacific Railroad Co., 116 Mo. 450; Chillicothe v. Brown, 38 Mo. App. 609; Kansas City v. Sutton, 52 Mo. App. 398; Monett v. Campbell, 204 S. W. 32.

WHITE, C.—This is a companion case to No. 21,151 of the same title. Many facts pertinent here are fully set out in the opinion in that case and it may be read in connection with this case. However, for convenience, it is proper briefly to restate some of them. That was a suit brought by plaintiffs as farmers and truck gardeners, to restrain the Commissioner of Weights and Measures of the City of St Louis from enforcing a certain ordinance, No. 29,795. In that case the circuit court, on a preliminary hearing for the purpose of determining whether a temporary restraining order should be issued, dismissed the bill without a final hearing on the merits of the case.

The ordinance complained of, enacted August 9, 1917, provided for a bushel box, and boxes holding fractions of a bushel, in which produce, fruits and vegeables should be marketed, of a cubical content *in excess* of the statutory bushel as provided by Section 11961, Revised Statutes 1909, and by the Federal statute. The plaintiffs were using as a bushel box one containing *less* cubical contents than the statutory bushel. After that case was heard and before its determination the City of St. Louis amended the ordinance so as to make it accord with the statute of Missouri and the Federal Statute. When that was done and the former case dismissed, the plaintiffs brought this suit to enjoin the enforcement of the ordinance as amended. In their petition in this case they set out the original ordinance enacted August 9, 1917, in full, and the amendment to the same made in April, 1918.

They allege that they are farmers and gardeners and market their produce either to commission merchants, retail grocers or hucksters; that their produce is packed in wooden boxes, or crates, before being loaded,

and in loading the boxes are packed in tiers and so arranged that the bottom tier is protected from upper tiers; that in capacity said boxes or crates range from three-fourths of a bushel, standard measure as defined by statute, to a bushel, and are used by all truck gardeners in the vicinity where plaintiffs grow their produce; that they have been used for twenty-five years in that manner and are peculiarly suited to the economical and safe delivery of produce; that the plaintiffs and other truck gardeners and farmers have on hand, complete to be used, 1,875,000 of such boxes, which cost them in the neighborhood of $350,000; that their delivery trucks are especially designed to conform to the size of said boxes and crates; that the produce which they sell is neither bought nor sold by the bushel but, by special agreement between the sellers and purchasers, it is sold by the box or crate and the purchasers from plaintiffs are not in any manner misled or deceived as to the capacity of the boxes in which the produce is sold; that they deliver their boxes full to the purchaser and receive in return in each case empty boxes of the same size and character from the purchaser.

Upon the filing of this petition and a bond in the sum of one thousand dollars, duly approved, a temporary restraining order was issued and served upon the defendant Weeke, who was ordered to show cause on a certain day why the injection should not issue. Thereupon the defendant filed his return in the nature of an answer to the allegations of the petition. Afterwards the parties filed a stipulation as to certain facts, wherein they agreed that the case might be submitted ''for final adjudication upon the petition of the said return of the respondents, to be taken and construed as an answer thereto, and the reply of the plaintiffs filed on that date, together with certain stipulations of facts.'' The court thereupon heard the case upon its merits, found the issues in favor of the defendant and dismissed the bill, and from that judgment the plaintiffs appealed to this court.

Ordinance No. 29,795, in its original form provided, among other things, the duties of the Commissioner of Weights and Measures to test the accuracy of weights and measures and to seize in the name of the city, "all false weights, measures and scales, and to make arrests of persons violating the ordinance by using false weights and measures and scales." It provided for inspection of all weights and measures examined, and penalties for persons having weights and measures in their possession, for refusing to allow them to be tested and examined, and for using weights and measures that are not tested; that the commissioner should mark "condemned" weights, measures, standards, etc., that did not conform to the standard in this State, and that it should be a misdemeanor to use a weight or measure containing a less quantity than represented.

Section 22 of that ordinance fixed the dimensions for standard boxes to hold bushels, half-bushels, and other fractional parts of a bushel, making the cubical contents of such boxes greater than the statutory requirements. Section 23 of the ordinance provided for a fee of ten cents each for inspection of such boxes, that they should be inspected once a year, and that it should be a misdemeanor for anyone to use boxes of other dimensions for the purpose of selling fruits or vegetables. Those were the sections struck at in the other suit.

By the amendment of April, 1918, sections 22 and 23 of the ordinance were made to read as follows:

"Section 22. *Standard bushel box and fractional part part thereof established.* There is hereby established a standard bushel box, the dimensions of which shall be as follows; Length twenty-two inches; depth, eight and one-half inches; width, eleven and one-half inches; which bushel box shall contain twenty-one hundred and fifty and five-tenths cubic inches. There is hereby established a stardard half-bushel box, the dimensions of which shall be as follows: Length, twenty-two inches; depth, four and one-quarter inches; width, eleven and one-half inches, which half bushel box shall contain one

thousand and seventy-five and two-tenths cubic inches. *All boxes or containers in which fruits and. vegetables are sold or offered for sale shall be of the foregoing dimensions and standards, unless otherwise provided by ordinance.*

"Section 23. *Penalty.* Any person, firm or corporation who shall sell or offer for sale in the City of St. Louis any fruits or vegetables except fresh berries, cherries, currants or other small fruits, in any box or receptacle that is *of a capacity different from that hereinbefore provided,* shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than five dollars nor more than five hundred dollars."

It will be seen by this amendment Section 22 is in agreement with the statute as to the cubical contents of a bushel. The answer restates much of the same matter contained in the petition, including the ordinance, and sets out at length Judge TAYLOR's opinion delivered in the previous case.

The stipulation which supplements the pleadings is to the effect that the defendant Commissioner of Weights and Measures intends to arrest and prosecute plaintiffs and others using boxes in violation of the ordinance as long as they fail to use boxes of 'the exact dimensions and contents provided in the amended ordinance, regardless of how said boxes are marked or whether said boxes contain more than the quantity marked on the box or not; that the defendant, Weeke, has not destroyed any boxes belonging to any of the plaintiffs since the 23rd day of April, 1918; "that all persons who now sell direct to the consumer of products sold by the plaintiffs are required to sell and do sell by weight and not by measure." The further fact was stipulated for what it is worth, that a number of farmers and truck gardeners, naming them, forty-five or fifty, use boxes which correspond to the requirements of amended sections 22 and 23 of the ordinance.

The amended ordinance at which this proceeding is aimed does not contain the oppressive feature of in-

spection fee for each box contained in the original ordinance and there is no threat of the Commissioner of Weights and Measures to destroy without a hearing the boxes or other property of plaintiffs.

I. Appellant asserts that sections 22-23 of the ordinance are unconstitutional and in conflict with Article I, Section 10, of the United States' Constitution, and with Article XI, Section 15, of the Constitution of Missouri, in that the ordinance, prohibiting a person Impairment of Freedom of Contract. from selling his produce in any form or manner or in any quantity which he sees fit and which his purchasers desire, so long as his method is fair and characterized by honest dealing with his purchaser, impairs the right to make contracts.

As a police regulation, for the purpose of protecting the public and consumers from fraud and imposition in their purchase of commodities, it is recognized by the courts that the legislative authority has the right to regulate weights and measures and delegate that authority to municipal corporations so that the latter, in so far as they exercise police powers, may regulate weights and measures. The question here is whether this regulation is such as to invade the constitutional right to make contracts. This court has considered the question in construing the statutes providing for official weighers of coal and grain. A leading case is State ex inf. v. Merchants Exchange, 269 Mo. 346. In that case the court had under consideration the constitutionality of a statute which forbade any person, corporation or association other than the duly authorized and appointed State weigher to issue any weight certificate or to issue or sign any ticket purporting to be the weight of any car, wagon, sack, or other package of grain weighed at any warehouse in the State. The court held that the purpose of the act was to protect from fraud the people who sold and bought grain, and banks who loaned money on warehouse receipts. This language is used, l. c. 358: "The whole purport of the act is for such official super-

vision in the principal grain markets as will protect not only the buyers, but the sellers of grain. In other words, it establishes a disinterested agency between the buyer and seller, both as to weights and grades of the grain. If a wheat-grower of Missouri ships a car of wheat to St. Louis, he is not forced to take the grading and weighing of the defendant (an association of grain dealers and speculators), but he has the protection of the disinterested agency established by the State, an agency duly bonded for faithful performance of duty.''

The effect of that statute then was to make the certificate of the weigher an official guaranty that the commodity which is represented was correctly represented, without further investigation on the part of the purchaser or of the seller. It would not only save time and expense in negotiations of that kind, but was a power for protection against fraud and imposition in connection with such sales. The case quotes from an earlier case, Coal Co. v. City of St. Louis, 130 Mo. 327, where a municipal ordinance similar in import was under consideration, and it was held binding and valid under the charter authority of the City of St. Louis wherein it had authority to license, tax and regulate retailers, and ''establish the standard of weights and measures to be used in the City of St. Louis.'' It is pointed out in those cases that a purchaser or a seller may weigh his grain for his own satisfaction, but that the official weight only can be allowed in buying and selling.

In the case of Ex parte House v. Mayes, 227 Mo. 636, this court had under consideration a statute which provided that no agent or broker selling grain, etc., should have authority, under claim of right to do so by reason of any custom or rule of any board of trade, to sell such commodities except on the basis of the actual weight thereof, and any contract for such sale in violation of the act should be null and void. The Board of Trade of Kansas City had a rule which permitted the purchaser of grain to deduct a hundred pounds from a carload of such grain because of dirt and foreign sub-

stances which were presumed to be in it and which were swept out after it was unloaded, it being common experience that about that amount of dirt on the average was in each carload.   One R. J. House was prosecuted for making such deduction in accordance with the rules of the Board of, Trade and in violation of the statute. It was held that the statute was valid and constitutional as a matter of police protection, and not in violation of the Constitution which prohibits any act impairing the obligation of contracts.

An ordinance of the City of Chicago, fixing the standard size of loaves of bread and prohibiting the sale of loaves of any other size, was held to be constitutional by the Supreme Court of Illinois.  [Chicago v. Schmidinger, 243 Ill. 167.]   The case was taken to the Supreme Court of the United States, where it was affirmed under the title, Schmidinger v. City of Chicago, 226 U. S. 578.   That court, in the opinion rendered, thus comments upon the claim that the effect of the ordinance was to impair the right to contract, l. c. 589: ''This court has had frequent occasion to declare that there is no absolute freedom of contract.   The exercise of the police power fixing weights and measures and standard sizes must necessarily limit the freedom of contract which would otherwise exist.   Such limits are constantly imposed upon the right to contract freely, because of restrictions upon that right deemed necessary in the interest of the general welfare. So long as such action has a reasonable relation to the exercise of the power belonging to the local legislative body and is not so arbitrary or capricious as to be a deprivation of due process of law, freedom of contract is not interfered with in a constitutional sense.''

The law of Maryland which provided that it should be unlawful to carry. out of the State any hogshead of tobacco raised in that State except as had been inspected, marked and passed according to the provisions of the act regulating the inspecting and marketing of tobacco, was held to be constitutional by the Supreme Court. [Turner v. Maryland, 107 U. S. 38.]

The Supreme Court of Massachusetts held constitutional an act which provided that the sale of oats and meal must be by the bushel, and providing that an action could not be maintained for the price of such commodity when sold by the bag. [Eaton v. Kegan, 114 Mass. 433.]

The ordinance under consideration here fixes the cubical contents of bushel and half-bushel boxes and provides a penalty for using boxes of a *different capacity*. The effect of the ordinance is that certain commodities could not be sold except in containers containing a bushel or a half-bushel. The prohibition of the use of boxes of other capacity is sufficient guaranty that boxes of other capacity would not be used, and furnished the same protection to the purchaser that the final weighing certificates would furnish in case of the sale of hay and coal as considered by the court in the Merchants Exchange case, supra, and the Coal Company case, supra. The reason for the validity of the statute and the ordinance in those cases applies with equal force to the ordinance here. It is not unconstitutional as impairing the obligation of contracts.

II. But it is claimed that the ordinance is an unreasonable regulation in its operation, in that it not only prohibits the use of containers of any other capacity than that provided, but prescribes the exact dimensions, the length and depth of the boxes, and forbids the use of containers of equal capacity of any other shape. That is, a box may be a perfect cube and contain a bushel or a half-bushel. Of course, this court may determine whether an ordinance is reasonable or unreasonable (Union Cemetery Assn. v. Kansas City, 252 Mo. l. c. 500 ), and in considering the matter may settle it by inspection of the ordinance on its face, or, may find it unreasonable by a state of facts which affects its operation. [St. Louis v. Theatre Co., 202 Mo. l. c. 699.] It might be unreasonable in one place and perfectly reasonable in another. It might be unreasonable

Dimensions.

in a mere village, whereas in a large city, with its great volume of busi ess of the character affected, it would be a reasonable regulation. Here there are several thousand farmers engaged in raising and selling produce. There are hu idreds of thousands of consumers in the City of St. Lo uis, many of whom, doubtless the majority, at some time or other purchase these very commodities. The evi lent purpose of the ordinance in providing containers of uniform shapes and sizes was that a purchaser ea ily could tell the exact quantity of the commodity he vas buying, the presumption being that the box contai ing the commodity which he purchased had passed t e final test as to capacity, and he need not trouble hir self in relation to that matter or inquire further. Lik wise, it may be said that certain definite shapes and dimensions would greatly facilitate inspection, lessen the expense of supervision for the city and conduce ir no way to hamper or hinder the course of trade.

It might be sa d further that the plaintiffs here could not complain hat the definite dimensions of the boxes were provided because they were using, or claimed the right to use, b xes of uniform dimensions and capacity. The evidence shows they nearly all used exactly the same kind of boxes, as did all other persons pursuing like business. It seems from the facts stated in the record that it was to their advantage to use exactly the same kind of containers as to shape and dimensions. However, it is sufficient answer to this point to say that no penalty is fixed for the violation of that part of the ordinance prescribing the dimensions of the box; the plaintiffs could not be prosecuted for misdemeanors unless they used boxes of *different capacity*. In that respect the ordinance is no more unreasonable than the Chicago ordinance fixing the size of loaves of bread, or the statutes and ordinances considered in the Missouri cases cited above.

III. Plaintiffs, however, assert that the ordinance will be interpreted and enforced oppressively and il-

legally. Persons might use boxes having different length, width and depth from those mentioned in Section 22, and if they possessed the cubical contents of the boxes there provided for they would not be guilty of a misdemeanor under the provisions of Section 23. Yet, according to the stipulation, the defendant expects to prosecute plaintiffs for using boxes unless they are of the *exact dimensions* provided in the ordinance.

*Oppressive Enforcement.*

In this connection it appears that the only boxes which the plaintiffs use, and have no right to use, are those which do not have the *contents* provided for in Section 22. There is nothing to show that they expect to use boxes of the right capacity and of a different shape, but only expect to use the boxes they have been using which are of an insufficient capacity; therefore they are liable to incur the penalties of the ordinance in all they propose to do. This court cannot conjecture that they will use some boxes which they do not expect to use, or that they will be arrested and prosecuted for doing something which they do not intend to do. They cannot have an injunction to restrain the city from pursuing some unexpected and unthreatened prosecution.

IV. It is stipulated, as noted above, that the consumer who purchases the goods from their immediate vendors, goods which plaintiffs sell, are required to purchase by weight and not by measure. It is not stated whether this requirement is by ordinance or by contract. Section 28 of the ordinance provides that certain products enumerated, which are presumed to include some of the products sold by plaintiffs, shall be sold by weight, excepting, however, "commodities in original packages," and then provides that: "The term 'original package,' as herein used, shall be taken to mean packages in which the commodities have been packed before shipping by the grower, producer, or original packer thereof, and the contents of which have not been disturbed or diminished except for the purpose of ripening it or of replacing spoiled goods."

This provision of Section 28 evidently would exclude plaintiffs and those pursuing a like business, from an obligation to sell by weight, or persons handling their produce in original packages from selling by weight, and therefore the ordinance is in direct conflict with this stipulation as to its purport. This section of the ordinance must be construed in connection with the other sections. It certainly was not the intention in the passage of the ordinance to make any provisions which are absolutely nugatory. There would be no purpose or use in providing for dimensions of measures to contain a bushel, and half-bushel, unless the products were sold by the bushel or half-bushel; and the exclusion of the original packers and of property which comes in original packages from the requirement to sell by weight is the only reasonable construction of the provision in Section 28 in connection with the rest of the ordinance. We must attempt to take the evident meaning of the ordinance as it reads, even though counsel for both parties may have misunderstood its meaning, or may have inadvertently construed it differently.

It is also noted that throughout the ordinance the inspection and the penalties fixed apply to *false standards, false weights and measures.* The evidence here does not show that the boxes which the plaintiffs were using were measures or standards of measures; they were simply the containers in which they sold their products. The boxes are not used like a half-bushel measure to measure out the quantity of the product, they are only used to contain the products sold. Nevertheless Sections 22 and 23, leaving out of consideration the balance of the ordinance, fix the size and shape of box and name the penalty for using those of different capacity. Those sections are valid and effective as to that purpose, regardless of the rest of the ordinance.

While it is admitted that plaintiffs sold only to commission merchants and retail dealers who were not at all deceived as to the contents of the boxes and who did not buy by the bushel, nevertheless the commodities in the

original packages under the ordinance could be passed on to the ultimate consumer. It was entirely within the discretion of the city government to provide against imposition which they thought might occur in such sales to consumers. Their discretion and judgment in providing against possible fraud in the matter, whether sound or otherwise, is not for this court to determine. It is sufficient that the governing body deems the restrictions necessary for the protection of citizens and consumers. It has lawful authority to make the regulations and this court will not interfere.

The judgment is affirmed. *Railey, C.,* not sitting; *Mozley, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., has been adopted · as the opinion of the court. *Williams, P. J.,* and *Walker, J.,* concur; *Faris, J.,* concurs in separate opinion.

FARIS, J. (concurring.)—I concur for the reason only that· there is no penalty attached for the failure to use a container of the prescribed dimensions, thus leaving so much of the ordinance as prescribes the dimensions· of such containers neither mandatory nor punishable, but advisory only.

Boxes of Prescribed Dimensions.

I do not agree that the City of St. Louis has the authority under the .guise of a police regulation to require the use of containers of fixed and arbitrary dimensions. I concede the authority in the city to pass an ordinance requiring such containers to be of a certain capacity so as to guard against fraud and cheating and even to require such containers to be rectangular in shape, so as to minimize time and labor in ascertaining the conformity of such containers to the capacity required by the ordinance. But I do not think it lies in the power of the city to say by its ordinance that such containers must be of a required length, width and depth.· Neither do I think that one using containers of an

impeccable capacity, so far as complying with the requirement as to capacity is concerned, could be punished *in any wise* for using a longer, or a shorter, a wider or narrower, a deeper or shallower container than the arbitrary standard prescribed by ordinance.

Upon the view that the ordinance means what I have said above that it ought to mean, I concur.