LOUIS E. DENNIG, APPELLANT, v. EPHRIAM CLARE GRAHAM, RESPONDENT.—59 S. W. (2d) 699.

Springfield Court of Appeals. April 25, 1933.

*Gustave A. Stamm* and *Henson & Woody* for appellant.

*Phillips & Phillips* for respondent.

BAILEY, J.—This is a proceeding in equity to enjoin defendant, a resident of Butler County, Missouri, from trespassing upon and fishing in the waters of Greer Spring and Greer Spring Branch, maintained by plaintiff as a private fishing reserve. The petition, filed June 3, 1931, in the Circuit Court of Butler County, charges, in substance, that plaintiff is the owner of about 3900 acres of land in Oregon County, Missouri, and that a very large spring, commonly known as ''Greer Spring,'' rises from the earth wholly within said lands owned by plaintiff, and that the waters therefrom flow through plaintiff's lands for a distance of one and three-fourths miles; that said watercourse is known as ''Greer Spring Branch,'' and empties into Eleven Point River at a point within plaintiff's said lands and that plaintiff is the owner in fee simple of all the land surrounding said Greer Spring and Greer Spring Branch; that Greer Spring Branch is shallow and swift so that it cannot be navigated; that plaintiff has stocked the waters of Greer Spring and Greer Spring Branch with rainbow trout and has maintained the same as a private fishing reserve for the past fifteen years, all of which, it is alleged, was known by defendant; that said Greer Spring and Greer Spring Branch are entirely surrounded by a fence erected upon the lands of plaintiff and that plaintiff has posted notices on said fence at numerous places reading: ''No trespassing. Posted Land, L. E. Dennig, owner.''

It is further alleged in plaintiff's petition that defendant, Ephriam Clare Graham, has repeatedly entered upon the above described lands and waters owned by plaintiff, and committed trespass thereon by fishing in the waters, at various times, to-wit: ''on the 12th day of May, 1930, the 5th day of August, 1930, the 11th day of April,

1931, and the 12th day of April, 1931;" that defendant entered upon the lands and waters of plaintiff without his knowledge or consent and threatens to continue to fish in said waters without the knowledge or consent of plaintiff; that plaintiff has erected, at large expense, a fish hatchery for the propagation of rainbow trout adjacent to and connected with Greer Spring Branch, for the purpose of maintaining the supply of rainbow trout in said waters, and that he has expended large sums of money to preserve the same as private fishing waters, that plaintiff's right to fish therein, to the exclusion of defendant and the public generally, is of peculiar and exceptional value, the monetary value thereof not being capable of ascertainment, and that the value of the fish taken by defendant is unknown to plaintiff and therefore plaintiff has no adequate remedy at law for damages; that the continuing trespass of defendant constitutes an irreparable injury to plaintiff. The prayer is for injunctive relief as heretofore stated.

Defendant's answer consisted of a general denial and further pleaded substantially as follows: That the court was without jurisdiction of the subject-matter for the reason that the trespasses complained of, if any, were committed upon lands in Oregon County; that said Greer Spring is the largest, or second largest, spring in the world, and discharges water at the rate of 503,000,000 gallons per day; that the volume of water of the Spring Branch at its mouth is six or eight times that of Eleven Point River at the same point; that for more than fifteen years the State of Missouri has, at intervals, stocked said waters with rainbow trout and other fish for the benefit of fishermen desiring to fish in said waters; that the mouth of Greer Spring Branch is at all times open so that fish can and do pass from the waters of Eleven Point River into the waters of Greer Spring Branch and *vice versa;* that Greer Spring Branch, for quite a distance is navigable for small boats and has been made use of as such for more than twenty-five years; that, "defendant specifically denies that plaintiff owns the land under the banks or waters of Greer Spring, Greer Spring Branch, or Eleven Point River, or is entitled to the exclusive possession of the same, and denies that he owns or is entitled to the exclusive possession of the fish therein, or that he has the exclusive right to fish or determine who shall fish therein, or that he has the exclusive right to fish or determine who shall fish said waters—but to the contrary thereof, said fish belong to the State of Missouri, until lawfully reduced to the possession of some person.

Defendant, further answering, states that said waters aforesaid flow through wild, rocky and uncultivated land, and that by the fishing of said waters, no injury will be done either to the water or

land over and through which the same flows, and that the fish that might be caught as a result thereof are not property of the plaintiff, and defendant specifically denies this plaintiff will sustain any injury or damage as a result of the fishing of said waters by defendant.''

Estoppel is also pleaded.

Trial of the issues thus made was had in the circuit court of Butler County on the 25th day of August, 1931. The trial court took the matter under advisement, rendering a judgment on February 8, 1932, finding the issues in favor of defendant and decreeing that plaintiff take nothing by reason of his petition. From this decree, after an unsuccessful motion for new trial, plaintiff has appealed.

There is very little conflict in the evidence. While there was some objection to plaintiff's offer of proof of ownership of the land in question, that fact now appears to be conceded and plaintiff's ownership is no longer an issue in the case. The evidence stands uncontradicted that Greer Spring and Greer Spring Branch are wholly within the confines of plaintiff's said lands. The opinion on the part of all parties concerned (being loyal Missourians) is unanimous in upholding the reputation of Greer Spring as one of the largest springs in the world. But even though it be the eighth wonder of the world, this beauty spot of the Ozarks is now and was owned by a private individual, the plaintiff in this case. The evidence shows that he has stocked it with rainbow trout, obtained either from the State of Missouri, or the Federal Government, from time to time during the period of his ownership, or since 1915, and for a number of years, since his erection of a fish hatchery on the land, plaintiff has turned 100,000 to 150,000 trout per year into the spring; that plaintiff paid the express charges for all fish eggs obtained from the United States Government and all expenses in connection with the hatchery; that plaintiff, a resident of St. Louis, employed a caretaker to look after the hatchery and the premises during his absence; that plaintiff has built a cabin near Greer Spring Branch and made various other improvements in order to preserve the wild state of the premises; that the public was formerly permitted to fish in the spring branch until a fence was built around the same two years prior to the institution of this suit, at which time the land was posted by placing signs on the fence in various places reading, ''No trespassing. Posted Land. L. E. Dennig, owner.'' The evidence also shows that defendant (after the erection of said fence) entered upon plaintiff's premises on May 12, 1930, at which time he was found ''fly fishing'' in the spring; at that time the caretaker told him not to fish there, that ''Mr. Dennig did not allow it,'' whereupon defendant quit fishing, but maintained he had a right to do so; he was again discovered fishing in Greer Spring Branch in August, 1930, and on April 11th

and 12th, 1931. The evidence further shows that on the latter occasion defendant said that he thought he had a right to fish in Greer Spring because his license gave him that right; that, "he wanted him (plaintiff) to have him arrested;" that Mr. Dennig had no right to prevent him from going on the property and fishing.

Defendant admitted he had fished in the spring branch after having been notified that fishing therein was prohibited, but denied having fished therein after the land was "posted." He also testified he had no intention of fishing in said waters in the future. He had built a club house some distance down the river from the spring and claimed it was built contemplating the right to fish in Greer Spring and Greer Spring Branch. Plaintiff testified that on one occasion he told the caretaker, "I feel I had a right to fish there since I owned my own property there, and if he permitted the people in a radius of eight miles to fish that I was entitled to fish too." There is no other evidence that plaintiff did permit those who lived within a radius of eight miles to fish in the waters of Greer Spring after the land was enclosed, but even so, defendant lived and had his home in Poplar Bluff and claimed no residence in Oregon County other than the little club house and about an acre of ground.

The issues in this case have become quite simple on appeal. It will be noted from defendant's answer, from which we have quoted rather fully, that at the time this petition was filed defendant claimed the right to fish in Greer Spring and Greer Spring Branch. By his answer defendant based his right to fish therein on the theory that plaintiff was not the owner of the land under the waters of Greer Springs; that plaintiff did not have the right to the exclusive possession of the fish therein and that plaintiff did not have the exclusive right to fish in said spring and that plaintiff was estopped from preventing defendant from fishing therein. Although the answer set up such defenses, defendant's testimony weakened his stand on these claims of right because he says he has no intention to fish in said waters in the future. Moreover, he makes no such claims in his brief filed in this court.

On the other hand, plaintiff asserts seven propositions, as follows: (1) That the waters of Greer Spring are nonnavigable; (2) that plaintiff, as the owner of the surrounding land, has title to the bed of Greer Spring and Greer Spring Branch; (3) that by reason thereof plaintiff has the exclusive right to fish in said waters; (4) that the fact that the State of Missouri may have occasionally stocked Greer Spring with fish does not give the public or defendant the right to fish therein; (5) that defendant cannot claim the right to fish therein because of an alleged custom; (6) that defendant has gained no proscriptive right to fish in the waters of Greer Spring

by reason of having fished therein a number of years prior to the erection of the fence by plaintiff; (7) that the fact that defendant built a club house on Eleven Point River, relying on prior fishing, worked no estoppel against plaintiff from asserting the exclusive right to fish in the waters of Greer Spring. Abundant authorities in support of these various propositions are cited in plaintiff's brief. But these questions have now become moot and require no discussion. Defendant has abandoned all claim of right asserted in his answer. He now stands solely and squarely upon the proposition that injunction does not lie in this case.

In support of this contention defendant relies upon certain equitable principles which will be considered in order. It is first asserted that at the time this suit was instituted defendant was not threatening or intending to fish in Greer Spring Branch and for acts committed prior thereto injunction would not be granted, citing Fugel v. Becker, 2 S. W. (2d) 743, l. c. 744, and other cases. In the Becker case injunction was sought against the Secretary of State of Missouri to prevent him from contracting with newspapers relative to initiative and referendum petitions to be submitted at the 1926 election; at the time of the trial the 1926 election had passed and since there was no allegation that the Secretary was threatening to commit any such act thereafter, the Supreme Court denied the right to injunctive relief. In the course of its opinion the Supreme Court said, "an injunction will not be granted to restrain the doing of an act which has already been done." That general principle is well-established and almost self evident. The facts in that case, however, are far removed from the facts in the case at bar. In the Becker case a single act was the subject of the action which act had already taken place at the time of trial and there was no possibility of future acts being committed. In the case at bar future acts of trespass could be committed at any time defendant might choose to break into plaintiff's enclosure and fish, which he claimed the right to do. The "stage was set," in other words, so that defendant could trespass and fish upon the exclusive waters of plaintiff when he felt so inclined. Defendant had built and occupied a club house within a mile and a half of the mouth of Greer Spring Branch. He was a sportsman and no doubt loved to fish for the sportive trout in the cold waters of the spring. He built the club house intending to fish in Greer Spring and the branch and, in fact, until the trial of this case, claimed the right to do so at any and all times. It was a great "temptation" for a fisherman to fish the waters of Greer Spring, as one witness said. He had fished therein for years and all the evidence, except defendant's assertion that he had no intention to fish therein in the future, points to the fact that defendant

claimed the right to fish in said waters and threatened to do so, although he had been warned and notified that the owner did not allow fishing. His answer, by which he is bound, clearly indicates defendant claimed the right to fish in the waters of Greer Spring even after this suit was brought. We therefore conclude that there was ample evidence, to say nothing of defendant's claim of right under his pleading, indicating an intention on the part of defendant to fish in plaintiff's said private waters. There is no attempt being made in this case to enjoin past acts. Those acts are relevant only as tending to show defendant's present intention. In other words, the court may judge the future by the past actions of defendant, who went upon plaintiff's private lands without authority, in defiance of warning and notice and on divers occasions thereafter. He at no time denied the commission of said trespasses, but on each occasion, when apprehended, claimed the right to fish in Greer Spring or the branch. He still makes that claim in his answer. We think the case of Downing v. Corcoran, 112 Mo. App. 645, 87 S. W. 114, states the law of this case where the court, at page 649 says: "It is suggested that the acts complained of are now, and were at the beginning of this proceeding accomplished facts and that equity will not undertake to restrain the doing of things already done. The case of Carlin v. Wolff, 154 Mo. 539, is cited to sustain the suggestion. That case states the general rule of the powerlessness of courts of equity to restrain acts committed before the aid of the court is sought. That rule of law was stated in that case to the single and isolated act of obstructing an alley. But this is a different case. Here the pleader has set up, not a single accomplished act, but a series of acts continued through a space of time, each of them being a new obstructive measure to thwart a move of avoidance which the plaintiff would make to overcome a preceding wrongful act on the part of defendant. The defendant, according to plaintiff's bill, was engaged in a series of continuous wrongs and the proof sustained the allegations. Surely, in such state of case, the injured party must have a time when he can complain with certainty of redress."

We rule this point against defendant.

It is next urged by defendant that injunction will not lie to allay the fears of an individual but that there must be a reasonable probability that injury will be done if the injunction be not granted. This rule of equity is of course well-established. [Lester Real Est. Co. v. St. Louis, 169 Mo. 227, 69 S. W. 300; Stegmann v. Weeke, 279 Mo. 140, 214 S. W. 137, 5 A. L. R. 1060.]

But we think the evidence, as well as the pleading in this case, indicates with reasonable certainty that defendant not only claimed the right but threatened to exercise the right to fish in plaintiff's

private waters. The fact that defendant testified he had no intention to fish in Greer Spring in the future is not controlling and we suppose defendant would make no such claim. All the facts and circumstances must be weighed and considered. In the case of Polhemus v. Daly, 296 S. W. 442, an injunction was sought to prevent defendant from digging tiff from graves in a cemetery. It was there said that, "This is not such a case as where there is but a single completed act with no circumstances showing that the act would be continued, nor of a threat unaccompanied by an overt act. Appellant did say as a witness that he had no intention to dig tiff from graves, but added that he had never known of, or authorized, any such trespass.

It is particularly insisted that our opinion fails to follow the case of Lester Real Estate Co. v. St. Louis, 160 Mo. 227, 69 S. W. 300, wherein it is held that, in order to obtain an injunction, it must be shown that the act is not only threatened, but in all probability will be committed, to the injury of the complainants. Of course, such is the law. The evidence here shows the practice of digging tiff from the graves, many graves, on different days, and it is not necessary that it should be shown by direct proof that appellant actually said he would continue to do so, but rather, if it appears to the reasonable satisfaction of the court that injunctive relief is necessary to prevent the acts from being continued, then an injunction should issue." [Polhemus v. Daly, 296 S. W. (2d) l. c. 445-446.]

It is our opinion the weight of the evidence and defendant's answer show a reasonable probability that defendant intended to fish in the waters of Greer Spring.

It is urged that section 4354 and section 4405, Revised Statutes of Missouri, 1929, defining a trespass on realty where the land is posted and providing a penalty therefor, afford plaintiff with an adequate remedy at law by way of criminal prosecution and that therefore injunction will not lie. Defendant cites a number of cases developing the proposition that equity will not interfere, generally, to prevent the commission of a crime. [State ex rel. v. Canty, 207 Mo. 439, 105 S. W. 1078; State ex rel. v. Salley, 215 S. W. l. c. 243; State v. Springfield Gas & Electric Co., 204 S. W. 945.]

But it is also held that while equity will not ordinarily interfere by injunction to prevent the commission of a crime, unaccompanied by elements rendering the act a public nuisance, yet it may and will enjoin an act which threatens irreparable injury. [Hamilton-Brown Shoe Co. v. Saxey, 32 S. W. (2d) 1106, 131 Mo. 212.]

Does the right of plaintiff to have defendant prosecuted for a misdemeanor because of the trespass on his lands, afford plaintiff an adequate remedy at law? We confess this contention has consider-

able merit. There can be no doubt that our criminal law ordinarily provides sufficient protection against trespass on real estate. But in the case of a private fishery a peculiar situation prevails. The chief and only practical value of such property lies in its value as a private fishing reserve. In this case the land itself was wild and unfit for cultivation. Plaintiff maintained the property as a private fishing place and for no other purpose. He surely has a right to have such property interest protected. The relief afforded by injunction has been recognized in a great number of jurisdictions. [Winans v. Willetts, 197 Mich. 512, 163 N. W. 993; Lampey v. Danz, 86 Minn. 317, 90 N. W. 578; Lembeck v. Nye, 47 Ohio St. 336, 24 N. E. 686, 8 L. R. S. 578; Schulte v. Warren, 218 Ill. 108, 75 N. E. 783, 13 L. R. A. (N. S.) 745, 26 C. J. 621, 11 R. C. L. 1040.]

In the case of Hamilton-Brown Shoe Company v. Saxey, supra, the Court of Appeals states the rule here involved as follows:

"When we say that a court of equity will never interfere by injunction to prevent the commission of a crime, we mean that it will not do so simply for the purpose of preventing a violation of a criminal law. But when the act complained of threatens an irreparable injury to the property of an individual, a court of equity will interfere to prevent that injury, notwithstanding the act may also be a violation of a criminal law. In such case the court does not interfere to prevent the commission of a crime, although that may incidentally result, but it exerts its force to protect the individual's property from destruction and ignores entirely the criminal portion of the act. There can be no doubt of the jurisdiction of a court of equity in such case."

This case is referred to and followed in Kansas City Gunning Adv. Co. v. Kansas City, 240 Mo. 659, 144 S. W. 1099. In the case of Barbaro v. Boyle, 119 Ark. 377, 178 S. W. 378, in speaking of the power of the courts to protect such rights as are here involved, the Supreme Court of Arkansas said:

"The record shows that plaintiffs have expended much money upon their property and that the right to hunt and fish thereon is highly prized by them. They have the exclusive right to hunt and fish on their own lands, when they are inclosed. To hold that such rights are not of sufficient importance for the court to protect them by injunction would be to deprive property owners of substantial rights and to encourage wrongdoers in trespassing on their lands, for there could be no adequate recovery in a civil action for trespass."

It is our opinion the fact that defendant would be subject to arrest and prosecution for each and every trespass he might commit on plaintiff's fishing reserve does not afford plaintiff an adequate remedy at law. Plaintiff should not be required to resort to a criminal prose-

cution in each and every instance a trespass might be committed by defendant. He is entitled to the quiet and peaceable possession of his property without the annoyance and interference of trespassers. The remedy afforded by arrest and prosecution is for the State and not necessarily the individual. In such proceeding his property rights are not primarily being protected. It is the violation of the law against trespassing that is there involved. In this case defendant has claimed a right to fish in private waters belonging exclusively to plaintiff. He has asserted that right on all occasions and deliberately and wilfully entered upon plaintiff's premises, thereby invading plaintiff's private domain and destroying, in a measure, the only valuable property right plaintiff has in Greer Spring and Spring Branch. It is not a matter of the number of fish defendant might catch in a day or a year. The probabilities are he, although a skilled fisherman, could not catch enough fish to materially diminish the supply thereof. But he can destroy a valuable right, to-wit, the right of plaintiff to the exclusive and quiet enjoyment of the premises as a fishing resort and by his attitude and continued trespasses he has threatened to do so. It is a valuable right, recognized by our courts and one which, in our opinion, equity alone can adequately protect.

The point is made that the title to land is primarily involved in this case. We find no merit in that contention.

In an equitable proceeding, such as this, an appellate court is not bound by the findings of the trial court but will try the case *de novo*. [State v. Springfield Gas & Electric Co., 204 S. W. 943, l. c. 946.]

In view of the conclusions reached the judgment and decree of the honorable circuit court should be reversed and remanded with directions to enter a decree enjoining defendant from entering upon plaintiff's said lands and fishing in the waters of Greer Spring and Greer Spring Branch in accordance with the prayer of plaintiff's petition. It is so ordered. *Smith, J.,* concurs; *Allen, P. J.,* not sitting.